UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) CR. No<br>) CR 13 150-M/PAS |
| v. | ) In Violation of |
| RICHARD P. BACCARI | ) 18 U.S.C. § 371 |
| | ) 18 U.S.C. § 666(a)(2) |
| and | ) |
| | ) |
| CHURCHILL & BANKS COMPANIES, LLC | ) |

INDICTMENT

The Grand Jury charges that:

INTRODUCTION

**At all times material to this Indictment:**

1. The Town of North Providence, Rhode Island (hereinafter "the Town") was a local government that received federal assistance in excess of $10,000 during the one-year period beginning July 1, 2008 and ending June 30, 2009.

2. The Town Council ("the Council") for the Town of North Providence consists of seven Members of the Council. There are two Council Members elected from each of the three districts in the Town, and one Council Member-at-large.

3. Defendant RICHARD P. BACCARI ("BACCARI") was the president and chief executive officer of a Rhode Island real estate development company, co-defendant CHURCHILL & BANKS COMPANIES, LLC.

4. Defendant CHURCHILL & BANKS COMPANIES, LLC (hereinafter referred to as "CHURCHILL") operated in interstate commerce in the acquisition, development, construction and management of office, industrial, retail, and residential properties in Rhode Island and other states.

5. Robert S. Ciresi ("Ciresi") was an attorney with an office in North Providence, Rhode Island. At all relevant times, Ciresi represented CHURCHILL and BACCARI before the Council.

6. John A. Zambarano ("Zambarano") was a member of the Town Council, and thus an agent of the Town of North Providence, Rhode Island. As such, Zambarano's duties included voting on, enacting, amending, repealing and enforcing ordinances or resolutions necessary and proper for the operation of the town government and for the preservation of the public peace, health, safety and welfare of the inhabitants of the town, and granting, revoking and suspending licenses and permits.

7. Joseph S. Burchfield ("Burchfield") was the President of the Town Council, and thus an agent of the Town of North Providence, Rhode Island. As such, Burchfield=s duties included voting on, enacting, amending, repealing and enforcing ordinances or resolutions necessary and proper for the operation of the town government and for the

preservation of the public peace, health, safety and welfare of the inhabitants of the town, and granting, revoking and suspending licenses and permits.

8. Raymond L. Douglas III ("Douglas") was a member of the Town Council, and thus an agent of the Town of North Providence, Rhode Island. As such, Douglas' duties included voting on, enacting, amending, repealing and enforcing ordinances or resolutions necessary and proper for the operation of the town government and for the preservation of the public peace, health, safety and welfare of the inhabitants of the town, and granting, revoking and suspending licenses and permits.

9. CS#1, unnamed herein but whose identity is known to the grand jury, was an elected member of the Town Council.

10. Beginning in approximately late summer 2008, CHURCHILL sought to develop a supermarket at a property located on Plympton Street in North Providence, Rhode Island (hereinafter "the supermarket property"). The supermarket property is an approximately six (6) acre site located across from North Providence High School, on the site of a former junkyard. The property was zoned for Commercial Professional and Residential General use.

11. In order to develop the supermarket property as desired, BACCARI and CHURCHILL needed the Council to amend the

3

Town's Comprehensive Plan and re-zone the property to Commercial General use. (Said action will be referred to hereinafter as "the zoning change").

## COUNT ONE
## CONSPIRACY

12. Paragraphs 1 through 11 are hereby realleged as if fully set forth herein.

13. From a date unknown but at least as early as the fall of 2008, through at least on or about February 11, 2009 in the District of Rhode Island and elsewhere, the defendants

**RICHARD P. BACCARI and**

**CHURCHILL & BANKS COMPANIES, LLC**

together with John A. Zambarano, Raymond L. Douglas III, Joseph S. Burchfield, Robert S. Ciresi, and others known and unknown to the grand jury did knowingly and willfully conspire with each other to commit and attempt to commit offenses against the United States as follows:

    a. To corruptly give, offer, or agree to give anything of value to any person, with the intent to influence an agent of a State or local government, in connection with any business, transaction, or series of transactions of such government or agency involving anything of value of $5000 or more when such State or local government or agency received, in any one year

period, benefits in excess of $10,000 under a Federal program, in violation of Title 18, United States Code, Section 666(a)(2) and Title 18, United States Code, Section 2.

b. To corruptly accept and agree to accept, anything of value from any person, intending to be influenced in connection with any business, transaction, and series of transactions of the government involving anything of value of $5000 or more while being an agent of a State or local government and when such government or agency received, in any one year period, benefits in excess of $10,000 under a Federal program, in violation of Title 18, United States Code, Section 666(a)(1)(B) and Title 18, United States Code, Section 2.

### The Objects of the Conspiracy

14. It was an object of the conspiracy to cause the Town Council of the Town of North Providence, to take official action for the benefit of BACCARI and CHURCHILL, to wit, the zoning change, by approving changes to the Town's Comprehensive Plan and to re-zone the supermarket property so that BACCARI and CHURCHILL could develop the supermarket property.

15. It was further an object of the conspiracy for BACCARI, CHURCHILL, and Ciresi to cause Zambarano, Burchfield, and Douglas to receive a cash bribe, so as to improperly influence and affect the official actions of Zambarano Burchfield, and Douglas, specifically, to cause each of them to use his influence, power, and authority as a Town Council Member to benefit the business interests of BACCARI and CHURCHILL.

16. It was further an object of the conspiracy for Zambarano, Burchfield, and Douglas to unlawfully enrich themselves by seeking and obtaining a cash bribe payment from BACCARI and CHURCHILL in exchange for taking official action on the zoning change.

### Manner and Means of the Conspiracy

17. The manner and means by which the conspirators accomplished, and attempted to accomplish, the goals and objectives of the conspiracy included, but were not limited to, the following:

18. Zambarano, Burchfield, and Douglas planned bribe solicitations during telephone conversations and in-person meetings with each other, with Ciresi, and with CS#1.

19. BACCARI, CHURCHILL, Zambarano, Burchfield, and Douglas used Ciresi as a middleman to facilitate communications between

BACCARI, CHURCHILL and Zambarano and to deliver the bribe payment from BACCARI and CHURCHILL to Zambarano.

20. Zambarano solicited a bribe from BACCARI and CHURCHILL in exchange for official action before the Council.

21. BACCARI and CHURCHILL agreed to pay the bribe to Zambarano in exchange for official action before the Council, to wit, passage of the zoning change.

22. Zambarano, Burchfield, and Douglas agreed to share the proceeds of the bribe with each other and with CS#1.

23. Zambarano communicated to BACCARI and CHURCHILL through Ciresi that the bribe amount was to be doubled from $25,000 to $50,000 in exchange for official action before the Council, to wit, passage of the zoning change.

24. BACCARI and CHURCHILL agreed to pay the $50,000 bribe.

25. BACCARI and CHURCHILL caused a $50,000 cash bribe to be paid through Ciresi to Zambarano, Burchfield and Douglas.

### Overt Acts

26. In furtherance of the conspiracy, and to effect its objects, the co-conspirators committed the following overt acts among others, in the District of Rhode Island and elsewhere:

27. In or about October 2008, Zambarano, Douglas and Burchfield discussed the possibility of receiving a bribe in exchange for official action on the zoning change.

28. In or about October 2008, Zambarano had a conversation with Ciresi in which Zambarano and Ciresi discussed a bribe to be paid by BACCARI and CHURCHILL in exchange for favorable action by the Council on the zoning change.

29. In or about October 2008, the exact date being unknown to the grand jury, Ciresi accompanied Zambarano to CHURCHILL's office to meet with BACCARI for the purpose of discussing the payment of a bribe to secure the zoning change.

30. In or about October 2008, the exact date being unknown to the grand jury, Zambarano asked BACCARI for a $25,000 bribe in exchange for the votes of four Councilmen voting in favor of the zoning change.

31. In or about October 2008, the exact date being unknown to the grand jury, BACCARI agreed to pay Zambarano $25,000 in exchange for Zambarano delivering four Council Member votes in favor of the zoning change.

32. Between in or about October 2008 and February 9, 2009, the exact date being unknown to the grand jury, Zambarano asked BACCARI and CHURCHILL, through Ciresi, to increase the bribe amount to $50,000. BACCARI and CHURCHILL agreed.

33. On or about November 12, 2008, in Orlando, Florida, Zambarano and Douglas discussed the supermarket property bribe. Zambarano expressed words to the effect that he

      hoped the zoning change bribe would go through before Christmas because he needed the money.

34. On or about January 27, 2009, Zambarano and CS#1 discussed the zoning change bribe in a telephone conversation. During the conversation, CS#1 mentioned Zambarano's comments in Florida regarding getting money from the zoning change for Christmas. CS#1 told Zambarano that CS#1 needed money and was willing to sell CS#1's vote on the Council to be included in the scheme. CS#1 asked Zambarano "...Why can't you guys include me in this stuff. You turn a blind eye here and there. I'm willing to do that..." CS#1 further stated "Just, do me a favor. When there's issues like this where you know we can, we can take something - cut me in - consider me. Instead of leaving me out in the cold and, and then I'm always the guy that has to make the noise. I'd rather be part of the group, than against everybody all the time...." CS#1 further stated "So, you know, if there's something there I'm willing to look the other way, to bend, to shut up, to throw a vote here and there." Zambarano responded by informing CS#1 that he would get back to CS#1.

35. On or about January 27, 2009, immediately following the conversation between Zambarano and CS#1, Zambarano called Douglas to discuss involving CS#1 in the zoning change bribe.

36. On or about February 9, 2009, Zambarano met with CS#1 to discuss including CS#1 in the zoning change bribe. Zambarano stated "...I talked to these guys after we had that conversation... only three of us involved in this... so it took me a little convincing."

37. During the February 9, 2009 conversation Zambarano told CS#1 that the others involved in the bribery scheme were Burchfield and Douglas. Zambarano stated "They don't even want to talk to you about it. In other words, they agreed...." Zambarano continued "Now it's gonna be four of us. So, you come tomorrow night. If you go along with the show and go along with everything we'll give you four thousand dollars...." Zambarano stated "And I'm gonna tell you it was twenty five divided by three. So we're not getting much more than you are...." Zambarano stated "But I mean I negotiated the deal. I mean... and they were in on it from the beginning...so I came up with that figure." CS#1 asked "Twenty-five hundred?" to which Zambarano replied "Twenty-five thousand."

38. During the February 9, 2009 conversation Zambarano described to CS#1 the meeting between BACCARI and Zambarano in which the bribe was offered and accepted. Zambarano stated "[BACCARI] had every councilman down there. And, and, and Bobby Ciresi was calling people, telling them to

go down there and look at it and he was going. And, and everybody was going like, like [a Council Member] and, ah,.. and, and Ray [Douglas] went, Joey [Burchfield] went alone and stuff. So I, I didn't get the call. So I said 'Bob' I said. 'Uh, am I gonna go down there?' 'Oh, yeah, yeah,' he said, 'He [BACCARI] wants you to go last.' So I went, I went down there and [BACCARI] showed me the things and everything and [BACCARI] said to Bob- Bobby, he, he said to Bobby, 'Ah, Bobby, ah, can you give us a minute?' [BACCARI] says to me 'You deliver four votes, I'll give youse twenty-five thousand dollars.' I says 'I'll get, I'll get them done.'"

39. During the February 9, 2009 conversation between CS#1 and Zambarano, Zambarano explained how the zoning change bribe would be executed, indicating that BACCARI would only pay after the vote. "I call him R.B. ...We're gonna have the meeting. I mean I had to negotiate this too because they weren't happy with this but he [BACCARI] said 'That's the way I do business.' Nothing, he's not giving us nothing until after the meeting."

40. During the February 9, 2009 conversation between CS#1 and Zambarano, Zambarano explained the bribe would be delivered after the Town Council meeting. Zambarano stated "I'm getting it tomorrow night. I'm meeting him and Bobby

11

Ciresi about an hour after the meeting. ... I'll give everybody theirs too... and then Wednesday after work I'll give you the $4,000. But Ray [Douglas] says to me 'He's not gonna make this hard for us tomorrow night is he?'" Zambarano then asked CS#1 "You're going to vote for it right?" to which CS#1 replied "Yeah."

41. During the February 9, 2009 conversation between CS#1 and Zambarano, Zambarano told CS#1 that there may be a future opportunity to solicit and receive a bribe from BACCARI and CHURCHILL. Zambarano stated "There's something else coming down the road, in the future. I mean, we can all be part of this again. He told me, R.B. told me, that he might want to might want to put a... Richard Baccari. He might want to ... put a Applebee's or a Chili's in that parking lot... [BACCARI] says, uh, 'But we're gonna need a liquor license.' Now, he doesn't know that they're a dime a dozen now and I'm not gonna tell him. You know what I'm saying? [BACCARI] said 'I'm gonna need that, I'm gonna need that from you' and he said 'I'll do whatever.' He said 'I'll own the building, they'll lease, they'll lease the license and the building from me.'"

42. In the February 9, 2009 conversation Zambarano stated to CS#1 "Just go along with the show tomorrow. 'Cause, ah, Bobby Ciresi said to me today, he said 'Johnny. Now

Richard,' he said, 'Richard [BACCARI] called me. He said he doesn't want no stipulations. He wants this passed the way it's gonna be presented.'"

43. In the February 9, 2009 conversation, CS#1 and Zambarano discussed how to handle pressure from a business or individual who paid a bribe and later came before the council for official action on an unrelated matter. CS#1 asked "...if you... get paid for liquor licenses like that, what happens in a case like...say that bar down in, in Lymansville, when you have to discipline them?..." CS#1 continued "...if you had charged them and then there's an issue later, how, like, doesn't he like own you at that point?" Zambarano replied "No, see, they're breaking the law, just like we are." CS#1 then said "Yeah, but you think if, if he went and, and said something, who are they gonna grab? You, the guy who took the money, or him, the guy that was forced to pay?" Zambarano replied "I don't know. I don't know. But are you happy with the four [thousand dollars]?"

44. On or about February 9 or 10, 2009, the exact date being unknown to the grand jury, BACCARI, on behalf of himself and CHURCHILL, caused a $50,000 cash bribe payment to be delivered to Ciresi. BACCARI instructed Ciresi to deliver

the cash bribe payment to Zambarano in exchange for approval of the zoning change by the Town Council.

45. On Tuesday February 10, 2009, the Council held a vote on the zoning change. Burchfield, Zambarano, and Douglas and CS#1 all voted in favor of the zoning change, which passed.

46. After the February 10, 2009 Council Meeting, Douglas approached CS#1 as CS#1 sat in CS#1's vehicle preparing to leave. Douglas knocked on CS#1's vehicle window and said words to the effect of "It was nice not having to work against you."

47. After the February 10, 2009 Council Meeting, Zambarano returned to his home, switched vehicles, and then drove to the empty parking lot of Antonio's Restaurant, 1710 Cranston Avenue, Cranston, Rhode Island and parked there at approximately 10:29 p.m.

48. On or about February 10, 2009, at approximately 10:32 p.m., Zambarano used his cellular telephone to call Ciresi's cellular telephone. The call lasted approximately 1 minute.

49. On or about February 10, 2009, at approximately 10:33 p.m., Ciresi pulled into the parking lot of Antonio's Restaurant to deliver Zambarano the $50,000 cash bribe on behalf of BACCARI and CHURCHILL. Ciresi pulled along side

Zambarano's vehicle and stopped for approximately 3 minutes and delivered the bribe.

50. On or about February 10, 2009, Ciresi retained $4,000 of the cash bribe paid by BACCARI for himself and gave Zambarano the remaining $46,000.

51. On or about February 10, 2009, after receiving the cash bribe, Zambarano, Burchfield and Douglas met at Douglas' residence to divide the bribe proceeds and discuss the bribe. Burchfield told Zambarano words to the effect of "Hey Zam, you really orchestrated this great."

52. On or about February 11, 2009, Zambarano met with CS#1 in CS#1's vehicle and delivered a $4,000 cash payment to CS#1, representing CS#1's portion of the $50,000 bribe paid by BACCARI and CHURCHILL.

53. On or about February 11, 2009 while delivering the $4,000 cash payment to CS#1, Zambarano discussed the zoning change bribe with CS#1 and the conspirators intent to solicit future bribes. Zambarano said "I went down to [BACCARI's]. What happened was, I'm very close to Bobby Ciresi. I'm very close to him and he said to me 'If youse want something, you're the guy that's gonna do the deal. He [BACCARI] doesn't want to talk to anyone else about it.' So I went down there... so I said 'Alright. How does twenty-five sound?' He [BACCARI] said 'Fine.'" CS#1

replied "That easy? You could have said forty." Zambarano then responded "I could have said fifty. But next time, the Applebee's or the Chili's, I'm going to go for it." Zambarano did not tell CS#1 that he had, in fact, asked $50,000 and that BACCARI agreed.

**All in violation of Title 18, United States Code, Section 371.**

### COUNT TWO

### Giving a Bribe To An Agent of An Organization Receiving Federal Funds

54. The allegations set forth in paragraphs 1 through 53 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

55. On or about February 10, 2009, in the District of Rhode Island and elsewhere, Defendants,

**RICHARD P. BACCARI**

**and**

**CHURCHILL & BANKS COMPANIES, LLC**

did knowingly, intentionally and corruptly give, offer and agree to give things of value to one or more agents of an organization, to wit: The Town of North Providence, Rhode Island ("the Town"), which organization received benefits in excess of $10,000 under one or more federal programs involving grants, contracts and other forms of federal

assistance in a one-year period, with the intent to influence those agents in connection with business and a series of transactions of the Town involving $5,000 or more, that is the zoning change.

**All in violation of Title 18, United States Code, Section 666(a)(2), and Title 18, United States Code, Section 2.**

A TRUE BILL:

**REDACTED**

By:

Assistant U.S. Attorney

Stephen G. Dambruch
Assistant U.S. Attorney
Criminal Chief

Date: 10-23-2013